Bissell, J.,
delivered the opinion of the court.
George M. Parkins was indicted by the grand jury for the crime of killing stock. Having been arrested under the indictments he entered into a recognizance in the sum of $600, according to the statute, conditioned as provided by law, with the appellants, Ayres and Wood, as his sureties. He *118 afterwards left the country, and failed to appear as required by the order of court, and the recognizance was duly forfeited. The present suit was brought to recover its penalty, $600. In the earlier stages of the suit various questions were raised, but these were all eliminated by the subsequent answer which the sureties filed, and it left but one proposition in the case. The answer substantially alleged that notwithstanding Par-kin’s failure to appear according to the terms of the bond, the sureties, prior to any recovery of judgment against them, caused the principal to be seized and surrendered to the sheriff of Logan county, and received from him a written receipt acknowledging the surrender. They announced themselves ready and willing to pay the costs, and averred that they employed a messenger to go for Parkins on a promise to pay the actual expenses, and that the messenger received from Logan county $330. This was all the substantial portion of the answer, although there was an immaterial averment that the county acted as a volunteer in making the payment, and that the controversy was as to whether these expenses were legitimately taxable as costs against the sureties, which they were obligated to pay under section 969 of the General Statutes, in order to escape a liability for the full amount of the bond.
This is really the only legal proposition presented to the court which requires either discussion or analysis. There was considerable controversy on the trial as to the circumstances connected with the going of the sheriff of Logan county to Ohio to bring Parkins back. The appellants contended that he went under their employment, while the people asserted that he went as the officer of the county under an arrangement with the board of county commissioners, who were obligated to pay him a definite compensation for his labor, which they subsequently discharged by giving him a warrant therefor, which was paid. The trial court found this fact with the people, and the finding is so well justified by the evidence that this court, whatever its opinion might be, would be disinclined to disturb the judgment in that partic *119 ular. It is undoubtedly true that the sheriff went at the-instigation of the sureties. Possibly this was essential to their defense that they were entitled to be released from the ■ bond, upon the production of the receipt of the sheriff, for the body of their principal, providing they paid whatever expenses were incident to the capture of the fugitive. It is not clear, however, that the sheriff went by virtue of their employment, or accepted their responsibility. It remains' manifest that the sheriff went to Ohio after Parkins as an officer of the law of Logan county, under an employment and an agreement with the properly constituted government of that organization, and that what he was to receive as compensation, and what he disbursed, were legitimately costs connected with the return of the fugitive. It must be true that these expenses and disbursements and this compensation were the costs provided for by section 969 of the statutes, which these sureties must pay if they would escape an absolute liability for the entire amount of their obligation. What' the result would have been had they employed a private messenger, and succeeded in bringing the fugitive within the custody of the sheriff without any expense to the governmental officers, leaving unpaid only the ordinary taxable costs of the clerk and sheriff, it is wholly unnecessary to determine. Parkins was brought back through the instrumentality of the officers.of the county, who were requested to act by the sureties in respect- of this matter. It was entirely legitimate to use the process of the, law for the purpose, and to secure a requisition from the governor which would be a sufficient legal warrant to authorize the officer to act in a foreign country.. So long as the county was willing to proceed to secure the return of the fugitive by the means at its disposal, and this proceeding was had at the instance and request of the sureties, they must be held to be liable for all legitimate disbursements and costs attending the proceeding, if they desire to invoke the statute in order to escape liability for the sum total represented by the obligation into which they voluntarily entered. Having pleaded as a defense sim *120 ply that they were not liable upon the bond, because they had secured the return of the escaped prisoner into the custody of the sheriff of Logan county, and could not he held for the penalty, provided they paid the costs as to which they offered to reimburse the county, they cannot now be heard to insist that the one thing chargeable against them are the costs which the clerk might tax, and the fees which the sheriff might be entitled to receive, on the service and return of the papers. The phraseology of the statute is broad enough to warrant the interpretation that it intended to impose on the sureties a liability for whatever might he expended in securing the return of the escaped criminal, if their liability was to be measured not by the bond but by the costs of the return. It could not have been in the contemplation of the legislature that the fugitive should be returned through the acts of the sureties other than what might be essential to set the law in motion, since as individuals they would be powerless legitimately to bring the fugitive within the sovereignty from which he might have escaped. Under these circumstances the term “ costs ” as used in that section must be adjudged to include whatever the law officers might legitimately pay out, or have a right to charge, in connection with the return of the criminal for trial. It does not lie with the appellants to complain of this interpretation, since thereby they escape the greater liability of a voluntary obligation, which could otherwise be enforced as to its entire penalty.
This court is entirely disinclined to disturb the judgment on that assignment of error which insists that the court’s findings with reference to the contract is unsupported by the testimony. In the first place, this'court would not feel warranted in reaching a different conclusion, unless the result was manifestly unsupported by the evidence. Not only is this not true, but it is fairly certain that the court’s conclusion concerning the original arrangement under which the sheriff went to Ohio after the prisoner is fully justified by the testimony.
The assignments of error which are based on the alleged *121 errors of the court in receiving the testimony offered on the hearing do not seem to be well supported. That which is complained of is clearly illustrative of the circumstances which led to the going of the sheriff for the prisoner, and was evidently admissible as tending to show not only the circumstances under which the officer went, but to demonstrate that his going was not the result of a contract between him and the sureties, but an execution of the law under an arrangement with the governing body of the county, after-wards ratified and made legal by legitimate and proper official action. It is complained that the court erred in entering judgment for $330, instead of for $600, which was the amount of the bond. It is not easy to see how this gives the sureties the right to complain. Possibly if the judgment had been entered on an erroneous legal basis, they might he justified in contending that it was improperly entered, although the amount was less than that for which they were liable. However this may be, it cannot in this instance be successfully used as an assignment of error, since under the pleadings the only issue to be tried was as to what costs were properly taxable against them, and as to what was included in the term “ costs ” for the purposes of a proper judgment. The court’s conclusions in respect of these matters were in harmony with the law, and the judgment as entered correctly held the sureties liable for the sum found to be due.
The court committed no error during the progress of the trial, and entered a judgment which accords with both the law and the facts. There being no error in the record on which the judgment should be disturbed, it must be affirmed.

Affirmed.